UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JON SNYDER and SHORELINE APPRAISAL
SERVICES INC., individually and on behalf of          Case No. 1:24-cv-8940 (VM)
all others similarly situated,

                            Plaintiffs,

        -against-

DOMINICK R. DALE, ESQ., individually,
and THE LAW OFFICE OF
DOMINICK R. DALE, ESQ.,

                        Defendants.
------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

**KAUFMAN DOLOWICH LLP**
*Attorneys for Defendants*
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Telephone: (516) 681-1100
Facsimile: (516) 681-1101

On the brief:
   Brett A. Scher, Esq.
   Adam M. Marshall, Esq.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ........................................................................................................... 5

POINT I
THE COMPLAINT SHOULD BE DISMISSED
FOR LACK OF SUBJECT MATTER JURISDICTION ........................................... 5

    A.    Plaintiffs Have Not Alleged and Cannot Prove
           the Requisite Amount in Controversy ................................................. 6

    B.    The Home State Exception
           Precludes the Exercise of CAFA Jurisdiction....................................... 9

    C.    The Local Controversy Exception
           Precludes the Exercise of CAFA Jurisdiction..................................... 10


POINT II
THE COMPLAINT SHOULD BE DISMISSED
FOR FAILURE TO STATE A CLAIM .................................................................. 11

    A.    Plaintiffs Fail to State a Claim for Violation of Judiciary Law § 487 ................ 12

    B.    Plaintiffs Fail to State a Claim for Legal Malpractice ......................................... 14


CONCLUSION..................................................................................................... 17

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                               <u>**Page**</u>

Abrams v. RSUI Indem. Co.,
272 F. Supp. 3d 636 (S.D.N.Y. 2017) ........................................................................................ 9

AEI Life LLC v. Lincoln Benefit Life Co.,
892 F.3d 126 (2d Cir. 2016)........................................................................................................ 10

Ashcroft v. Iqbal,
556 U.S. 662 (2009)...................................................................................................................... 11

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)...................................................................................................................... 11

Black v. Ganieva,
619 F. Supp. 3d 309 (S.D.N.Y. 2022) ........................................................................................ 16

Bryant v. Silverman,
284 F. Supp. 3d 458 (S.D.N.Y. 2018) .................................................................................. 13, 14

Buchanan v. Law Offices of Sheldon E. Green, P.C.,
215 A.D.3d 790 (2d Dep't 2023) ........................................................................................... 12, 13

Campbell v. Zerocater, Inc.,
2025 WL 964106 (S.D.N.Y. Mar. 31, 2025) .............................................................................. 8

Carter v. HealthPort Techs., LLC,
822 F.3d 47 (2d Cir. 2016).......................................................................................................... 5

Commiso v. Pricewaterhousecoopers LLP,
2012 WL 3070217 (S.D.N.Y. Jul. 21, 2012) ............................................................................. 9

Cosgrove v. Oregon Chai, Inc.,
520 F. Supp. 3d 562 (S.D.N.Y. 2021) ........................................................................................ 5

D'Adamo v. Cohen,
232 A.D.3d 848 (2d Dep't 2024) ................................................................................................ 14

Davis v. Cohen & Gresser, LLP,
160 A.D.3d 484 (1st Dep't 2018) ................................................................................................ 15

Doeman Music Group Media & Photography LLC v. DistroKid, LLC,
2024 WL 4349480 (S.D.N.Y. Sept. 30, 2024).......................................................................... 6, 8

Drasche v. Edelman & Edelman,
201 A.D.3d 434 (1st Dep't 2022) .............................................................. 16

Friedl v. City of New York,
210 F.3d 79 (2d Cir. 2000)......................................................................... 16

Gumarova v. Law Offices of Paul A. Boronow, P.C.,
129 A.D.3d 911 (2d Dep't 2015) ............................................................... 13

Hart v. Ricks NY Cabaret Intl., Inc.,
967 F. Supp. 2d 955 (S.D.N.Y. 2014) ....................................................... 10

In re Bystolic Antitrust Litig.,
583 F. Supp. 3d 455 (S.D.N.Y. 2022) ....................................................... 16

In re Drexel Burnham Lambert Grp., Inc.,
960 F.2d 285 (2d Cir. 1992)......................................................................... 7

Jean v. Chinitz,
163 A.D.3d 497 (1st Dep't 2018) .............................................................. 12

Katz v. Donna Karan Co., L.L.C.,
872 F.3d 114 (2d Cir. 2017)......................................................................... 5

Kurovskaya v. Project O.H.R., Inc.,
251 F. Supp. 3d 699 (S.D.N.Y. 2017) .............................................. 9, 10, 11

Law Practice Mgmt. Consultants, LLC v. M&A Counselors & Fiduciaries, LLC,
599 F. Supp. 2d 355 (E.D.N.Y. 2009) ....................................................... 14

Magnacoustics, Inc. v. Ostrolenk, Faber, Gerb & Soffen,
303 A.D.2d 561 (2d Dep't 2003) ............................................................... 16

Makarova v. United States,
201 F.3d 110 (2d Cir. 2000)......................................................................... 5

Moran v. Hurst,
32 A.D.3d 909 (2d Dep't 2006) ................................................................. 13

Philip S. Schwartzman, Inc. v. Pliskin, Rubano, Baum & Vitulli,
215 A.D.3d 699 (2d Dep't 2023) ............................................................... 13

Remler v. Cona Elder Law, PLLC,
2022 WL 4586243 (E.D.N.Y. Sept. 29, 2022) .......................................... 12

Schwartz v. Hitrons Solutions, Inc.,
397 F. Supp. 3d 357 (S.D.N.Y. 2019) ........................................................................ 5, 6

Shulman v. Chaitman LLP,
392 F. Supp. 3d 340 (S.D.N.Y. 2019) ........................................................................ 7, 8

Somma v. Dansker & Aspromonte Assocs.,
44 A.D.3d 376 (1st Dep't 2007) ................................................................................ 15

Thompson v. Global Contact Servs., LLC,
2021 WL 3425378 (E.D.N.Y. Aug. 4, 2021) .......................................................... 11

U.S. v. Strock,
982 F.3d 51 (2d Cir. 2020) ......................................................................................... 12

Venning v. Primark US Corp.,
2023 WL 8188432 (S.D.N.Y. Nov. 27, 2023) ........................................................... 8

Weir v. Cenlar FSB,
2018 WL 3443173 (S.D.N.Y. Jul. 17, 2018) ............................................................. 6

Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.,
166 F.3d 59 (2d Cir. 1999) ........................................................................................... 6

Wood v. Maguire Automotive, LLC,
508 Fed. Appx. 65 (2d Cir. 2013) ............................................................................... 6

Zirogiannis v. Seterus, Inc.,
221 F. Supp. 3d 292 (E.D.N.Y. 2016) ...................................................................... 16

## **Statutes**

28 U.S.C. § 1332 ................................................................................................*passim*

Fed. R. Civ. P. 12 .......................................................................................... 1, 5, 11

Judiciary Law § 487 .............................................................................. 12, 13, 14

Defendants Dominick R. Dale, Esq. ("Dale") and the Law Office of Dominick R. Dale, Esq. (the "Dale Firm") (collectively, the "Defendants"), by their attorneys Kaufman Dolowich LLP, respectfully submit this memorandum of law in support of Defendants' motion to dismiss the Complaint of Plaintiffs Jon Snyder ("Snyder") and Shoreline Appraisal Services, Inc. ("Shoreline") (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(1) and (6).[1]

## PRELIMINARY STATEMENT

This action is an ill-conceived attempt to smear Defendants in the public record. As set forth below, Defendants previously represented Plaintiffs (as defendants) in an ongoing collection lawsuit filed by a putative "merchant cash advance" company in New York state court. No judgment has been entered and discovery in the case is not due to close until later this year.

Despite the procedural posture of the underlying action, and despite Defendants having successfully fended off a summary judgment motion in that case, Plaintiffs assert that Defendants violated Judiciary Law § 487 and committed legal malpractice during the representation by supposedly serving and filing various litigation documents without their prior review or approval. Moreover, Plaintiffs purport to bring claims on behalf of two putative classes.

First, the Complaint should be dismissed for lack of subject matter jurisdiction. Plaintiffs have failed to plausibly allege and cannot prove the required amount in controversy for ordinary diversity or jurisdiction under the Class Action Fairness Act ("CAFA"). Moreover, even if CAFA were otherwise applicable, the statute's home state and local controversy exceptions preclude the exercise of such jurisdiction.

Second, the Complaint should be dismissed for failure to state a claim. Plaintiffs have not alleged intentional deceit to support a cause of action under Judiciary Law § 487 and there is

---

[1] A copy of the Complaint is annexed to the accompanying Declaration of Adam M. Marshall (the "Marshall Decl.") as Exhibit "A".

absolutely no basis to conclude that Plaintiffs suffered actual and ascertainable damages for purposes of Judiciary Law § 487 or a legal malpractice claim.  To the contrary, documentary evidence confirms that Plaintiffs' "damages" are nonexistent or speculative at best.

## BACKGROUND

The Complaint is heavy on legal conclusions and light on well-pleaded factual allegations. Unless otherwise noted, the allegations taken from the Complaint are accepted as true for the purposes of this motion only.

### A.    The RDM Agreement

On or about June 6, 2023, Shoreline entered into a so-called receivables purchase agreement with RDM Capital Funding LLC dba Fintap ("RDM"), whereby RDM purported to purchase $19,800 of Shoreline's future receivables in exchange for an up-front payment of $15,000, less various fees (the "RDM Agreement").  (Compl. at ¶ 97, Exhibit B).  The RDM Agreement required Shoreline to remit to RDM 6.12% of Shoreline's weekly receivables.  (Compl. at ¶ 98).  Snyder executed a personal guaranty of Shoreline's obligations.  (Id. at ¶ 98).

In or around July 2023, Shoreline began experiencing financial difficulties that prevented it from making payments to RDM under the RDM Agreement.  (Id. at ¶ 99).

### B.    The MCAR Agreement

On or about October 28, 2023, Plaintiffs entered into an agreement with MCA Resolve LLC ("MCAR").  (Id. at ¶ 102).  Pursuant to the agreement (the "MCAR Agreement"), MCAR agreed to work to resolve a schedule of debts incurred by Plaintiffs, including that associated with the RDM Agreement, in exchange for a fee.  (Id. at ¶¶ 103-05).

### C.    The Citadel Agreement

Simultaneous with the MCAR Agreement, Plaintiffs executed a Citadel Business Legal Plan

Membership Agreement (the "Citadel Agreement") with Citadel Business Legal Plan, LLC ("Citadel"). (Compl. at ¶ 109; Marshall Decl., Exhibit "C").

Pursuant to the Citadel Agreement, Plaintiffs agreed to pay Citadel an enrollment fee of $750 and a flat monthly membership maintenance fee of $100. (Compl. at ¶ 117; Marshall Decl., Exhibit "C" at p. 2, ¶ 1). Citadel agreed that, if Plaintiffs were sued by a creditor or a creditor's assignee to recover any of the debts listed in the MCAR Agreement, Citadel would "provide [Plaintiffs] with an attorney, pay 100% of that attorney's fees, and pay 100% of the court costs and/or arbitration fees and costs." (Compl. at ¶ 118; Marshall Decl., Exhibit "C" at pp. 2-3).

**D.    The Underlying Action**

On November 15, 2023, RDM commenced an action against Plaintiffs in New York State Supreme Court, Kings County (the "State Court") to recover damages for Plaintiffs' alleged breach of the RDM Agreement and personal guaranty (the "Underlying Action"). (Compl. at ¶ 134, Exhibit "E"). Citadel appointed the Defendants to represent Plaintiffs in the Underlying Action. (See Compl. at ¶ 49; Marshall Decl., Exhibit "B" at ¶ 11).

On December 12, 2023, Defendants sent Plaintiffs an email informing them of Defendants' appointment as counsel and attaching, *inter alia*, a letter and retainer agreement. (Compl. at ¶ 122, Exhibit "D"; Marshall Decl., Exhibit "D"). Plaintiffs replied that same day, acknowledging receipt and thanking the Defendants. (Marshall Decl., Exhibit "E"). However, Plaintiffs allege that they never executed the retainer agreement itself. (Compl. at ¶ 126).

On December 12, 2023, Defendants filed an attorney-verified answer and a motion to dismiss RDM's complaint in the Underlying Action. (Id. at ¶¶ 135-39, Exhibits "F" and "G"). Plaintiffs allege that Defendants did not discuss or provide Plaintiffs with either filing in advance. (Compl. at ¶¶ 136-37, 140).

On June 12, 2024, Defendants filed opposition to RDM's motion for summary judgment, which RDM had filed on April 12, 2024.  (Id. at ¶¶ 141, 143).  Plaintiffs allege that Defendants did not inform them of the pending motion or provide them with an advanced copy of the opposition.  (Id. at ¶¶ 142-44).

On June 28, 2024, the State Court denied RDM's summary judgment motion following oral argument.  (Marshall Decl., Exhibit "F").

In or about June 2024, Plaintiffs terminated or cancelled the Citadel Agreement.  (Marshall Decl., Exhibit "B" at ¶ 18).  Thereafter, Defendants sent Plaintiffs requests for payment to continue representing Plaintiffs in the Underlying Action on independent basis, outside the Citadel Agreement.  (See Compl. at ¶¶ 146-48; Marshall Decl., Exhibit "B" at ¶¶ 21-25).

On September 17, 2024, the State Court issued a compliance conference order in the Underlying Action, *inter alia*, giving the parties until October 17, 2024 to serve discovery requests and setting a deadline of November 28, 2024 for responses.  (Marshall Decl., Exhibit "G").

On November 21, 2024, attorneys Ariel Bouskila and Steven Berkovitch of Berkovitch & Bouskila PLLC ("B&B"), a law firm that typically represents "merchant cash advance" companies like RDM in debt collection matters, each filed a notice of appearance in the Underlying Action *on behalf of Plaintiffs*.  (Marshall Decl., Exhibit "H").

The Underlying Action is ongoing.  As of April 8, 2025, no judgment has been entered, and no further summary judgment motions have been filed.  (Marshall Decl., Exhibit "K").

**E.    <u>The Instant Action</u>**

On November 22, 2024, B&B and its co-counsel filed this action on Plaintiffs' behalf. (Marshall Decl., Exhibit "A").  The Complaint asserts causes of action under Judiciary Law § 487 and legal malpractice.

Prior to January 31, 2025, Plaintiffs and Defendants exchanged pre-motion letters in accordance with this Court's Individual Practices. (Marshall Decl., Exhibits "J" and "K"). Plaintiffs took the position that the Complaint was adequate on its face and made no offer to amend. (Marshall Decl., Exhibit "K").

## ARGUMENT

### POINT I

### THE COMPLAINT SHOULD BE DISMISSED
### FOR LACK OF SUBJECT MATTER JURISDICTION

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" Schwartz v. Hitrons Solutions, Inc., 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

"The Second Circuit has identified two types of Rule 12(b)(1) motions: facial and fact-based." Cosgrove v. Oregon Chai, Inc., 520 F. Supp. 3d 562, 572 (S.D.N.Y. 2021). "[T]o resolve a facial Rule 12(b)(1) motion, a district court must determine whether [the complaint and its exhibits] allege[] facts that' establish subject matter jurisdiction." Id. (quoting Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016)) (alterations in original).

On a fact-based Rule 12(b)(1) motion, a defendant is permitted to "proffer[] evidence beyond the complaint and its exhibits." Ibid. A plaintiff opposing such a motion "must come forward with evidence of [its] own to controvert that presented by the defendant," and may rely on the allegations in its pleading only "if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show [subject matter jurisdiction]." Id. at 572 (quoting Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 119 (2d Cir. 2017)).

Plaintiffs have failed to plausibly allege that this Court has subject matter jurisdiction over this action, either under ordinary diversity jurisdiction or CAFA.  (See Compl. at ¶¶ 15-16).  Moreover, documentary evidence establishes the absence of such jurisdiction.

**A.**     **Plaintiffs Have Not Alleged and Cannot Prove the Requisite Amount in Controversy**

Ordinary diversity jurisdiction requires, *inter alia*, that the amount in controversy exceed $75,000.  28 U.S.C. § 1332(a).  CAFA requires, *inter alia*, that the aggregate amount in controversy exceed $5 million.  28 U.S.C. § 1332(d).  In either case, "[Plaintiffs] bear the burden of 'proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount.'"  Schwartz, 397 F. Supp. 3d at 364.

Although "there is 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy,'" Doeman Music Group Media & Photography LLC v. DistroKid, LLC, 2024 WL 4349480, at *5 (S.D.N.Y. Sept. 30, 2024) (quoting Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)), "the presumption in favor of the plaintiff asserting jurisdiction is only available if the face of the complaint plausibly alleges facts suggesting that the claims exceed the amount in controversy." Id. at *6.  "Conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient."  Schwartz, 397 F. Supp. 3d at 365; Wood v. Maguire Automotive, LLC, 508 Fed. Appx. 65 (2d Cir. 2013); Weir v. Cenlar FSB, 2018 WL 3443173, at *12 (S.D.N.Y. Jul. 17, 2018).

The Complaint pleads no facts to support the conclusion that Plaintiffs suffered at least $75,000 in damages due to the Defendants' conduct or that the putative classes sustained aggregate damages of at least $5 million.  (See Compl. at ¶¶ 15-16, 168, 177).  First, Plaintiffs do not allege that they were held liable to RDM in the Underlying Action because of any supposed wrongdoing on Defendants' part.  Indeed, documentary evidence establishes that Defendants *defeated* the RDM

summary judgment motion referenced in the Complaint and that no judgment has been entered against Plaintiffs in the Underlying Action to date.  (Marshall Decl., Exhibits "F" and "I").

Second, Plaintiffs do not allege that they ever paid Defendants for their services in the Underlying Action – only that Defendants requested payment from Plaintiffs for the first time in June 2024.  (Id. at ¶ 146).  Moreover, the terms of the Citadel Agreement Plaintiffs executed confirm that the Defendants were paid *by Citadel* prior to June 2024, rather than by Plaintiffs themselves.  (Marshall Decl., Exhibit "C" at pp. 2-3).  Plaintiffs admit as much in the Complaint.  (See Compl. at ¶¶ 49, 118).

Third, the claims of putative class representatives must be "typical of the claims … of the class," Fed. R. Civ. P. 23(a)(3), meaning that "each class member's claim arises from the same course of events, and each class member makes the similar legal arguments to prove the defendant's liability."  In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992).  Assuming *arguendo* that Plaintiffs' claims are "typical" of putative class members, as they must be for jurisdiction under CAFA, there is no way that aggregate damages could reach $5 million since zero multiplied by "hundreds" is still zero.  (See Compl. at ¶ 159).

This Court's decision in Shulman v. Chaitman LLP, 392 F. Supp. 3d 340 (S.D.N.Y. 2019), cited in Plaintiffs' pre-motion letter (Marshall Decl., Exhibit "K" at 2), is readily distinguishable.  The plaintiffs in Schulman brought a putative class action against two law firms asserting claims relating to the firms' representation of the plaintiffs and putative class in lawsuits stemming from the liquidation of Bernard L. Madoff Investment Securities LLC.  Id. at 344, 346.  The thrust of the plaintiffs' allegations in that case, with respect to damages, was that the defendants "bilked hundreds of thousands of dollars (if not more)" from *each* of more than 100 clients, including plaintiffs.  Id. at 352, 354.  Moreover, the Court was presented with evidence demonstrating that,

during the relevant period, the defendants collected nearly $6 million in aggregate fees on the underlying matters – "thus exceed[ing] the $5,000,000 required amount-in-controversy."  Id. at 355.

Again, unlike the plaintiffs in Schulman, Plaintiffs paid the Defendants nothing.  (See Compl. at ¶¶ 48, 118; Marshall Decl., Exhibit "C" at pp. 2-3).  Moreover, Plaintiffs have not been held liable to RDM for anything in the Underlying Action.  (Marshall Decl., Exhibits "F" and "I").  And whereas the plaintiffs in Schulman pled jurisdictional facts regarding the damages of other putative class members with a modicum of specificity, 392 F. Supp. 3d at 346, Plaintiffs' Complaint includes just a single paragraph alleging that "[t]his Court has subject matter jurisdiction under [CAFA] because … the amount in controversy exceeds $5,000,000 exclusive of interest and costs[.]" (Compl. at ¶ 15).

"Courts have rejected similarly conclusory allegations as insufficient to satisfy the CAFA amount in controversy requirement."  Campbell v. Zerocater, Inc., 2025 WL 964106, at *4 (S.D.N.Y. Mar. 31, 2025) (no jurisdiction where "[t]he only reference to the amount in controversy in the Complaint" was "Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.'"); Doeman Music Grp., 2024 WL 4349480, at *8 (no jurisdiction where "Plaintiff [had not] alleged any facts whatsoever or provided any other evidence from which the Court may find that the amount in controversy requirement is, or could be, met."); Venning v. Primark US Corp., 2023 WL 8188432, at *1 (S.D.N.Y. Nov. 27, 2023) (no jurisdiction where plaintiff "allege[d] only conclusorily that 'the amount in controversy against the Defendant in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.").

Accordingly, Plaintiffs have not shown a reasonable probability that the amount in controversy exceeds the jurisdictional thresholds under 28 U.S.C. §§ 1332(a) or (d).

## B.    The Home State Exception Precludes the Exercise of CAFA Jurisdiction

"CAFA includes several exceptions, including the home state exception which provides that" '[a] district court shall decline to exercise jurisdiction … over a class action in which … two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" Gold v. New York Life Ins. Co., 730 F.3d 137, 141 (2d Cir. 2013) (quoting 28 U.S.C. § 1332(d)(4)(B)).

This Court has previously recognized that "[a] Court may infer citizenship for the purposes of evaluating whether the citizenship requirement of a CAFA exception has been met by the moving party." Kurovskaya v. Project O.H.R., Inc., 251 F. Supp. 3d 699, 703 (S.D.N.Y. 2017); Commiso v. Pricewaterhousecoopers LLP, 2012 WL 3070217, at *4 (S.D.N.Y. Jul. 21, 2012) (holding that courts may "simply make reasonable assumptions about the makeup of the putative class" when determining citizenship for CAFA exceptions).  In Kurovskaya, for example, the "Plaintiffs asserted in the First Amended Complaint that members of the class [were] 'individuals currently residing' in New York; the Defendant is a not-for-profit with its principal place of business in New York; and the class consists of persons employed by Defendant to provide 'home care services to Defendant's clients within the State of New York.'" Id. at 703.  This Court concluded that, "[w]hile it was certainly possible that some home care workers and putative class members employed by Defendant may commute to New York from neighboring states, … it [was] reasonable to infer from the facts mentioned above that two-thirds or more of the putative class members … [were] citizens of New York State." Id.

Here, the Complaint alleges or at least implies, correctly, that Defendants are New York citizens.  (Compl. at ¶¶ 20-21).  Moreover, both putative classes defined in the Complaint consist of "persons merchants, customers and clients **in the State of New York**."  (Id. at ¶ 157) (emphasis added).  Furthermore, the alleged conduct targeted in the Complaint relates to lawsuits filed in New York state courts.  (Id. at ¶¶ 71, 82, 134-52, 166-67).  While it is *possible* that some unnamed members of the putative class are citizens of other states, like Plaintiffs, it is *reasonable* to infer from the foregoing allegations that at least two-thirds of the putative class members are New York citizens.  See Kurovskaya, 251 F. Supp. 3d at 703.

Accordingly, even if this Court finds that the Complaint satisfies CAFA's amount-in-controversy requirement, it should decline to exercise jurisdiction under the home state exception.

**C.**    **The Local Controversy Exception Precludes the Exercise of CAFA Jurisdiction**

"CAFA provides for a mandatory exception to jurisdiction for matters that are 'local controversies.'"  Hart v. Ricks NY Cabaret Intl., Inc., 967 F. Supp. 2d 955, 962 (S.D.N.Y. 2014) (citing 28 U.S.C. § 1332(d)(4)(A)).  Under the local controversy exception, "[a] district court shall decline to exercise jurisdiction" under CAFA:

(A)(i)    over a class action in which—

    (I)    greater than two-third of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

    (II)    at least 1 defendant is a defendant--

        (aa)  from whom significant relief is sought by members of the plaintiff class;

        (bb)  whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

        (cc)  who is a citizen of the State in which the action was originally filed; and

    (III)    principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

    (ii)    during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A).

During the 3-year period preceding this action, no other class action has been filed against Defendants asserting the same or similar allegations.  (Marshall Decl. at ¶ 14).  Thus, the local controversy exception necessarily applies for the same reasons as the home state exception.  See Kurovskaya, 251 F. Supp. 3d at 704.  This Court should decline jurisdiction.

## POINT II

### THE COMPLAINT SHOULD BE DISMISSED
### FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Twombly, 550 U.S. at 556).  Although a court must accept the factual allegations of a complaint as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. (quoting Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

On a motion to dismiss pursuant to Rule 12(b)(6), a court "may consider documents that are attached to the complaint, incorporated by reference, integral to the complaint, or the proper subject of judicial notice."  Thompson v. Global Contact Servs., LLC, 2021 WL 3425378, at *5

(E.D.N.Y. Aug. 4, 2021) (quoting U.S. v. Strock, 982 F.3d 51, 63 (2d Cir. 2020)) (internal quotation marks omitted).

A.    **Plaintiffs Fail to State a Claim for Violation of Judiciary Law § 487**

A plaintiff seeking relief under Judiciary Law § 487 must allege that the defendant intentionally deceived the plaintiff or the court in a pending litigation, causing the plaintiff actual damages. Jean v. Chinitz, 163 A.D.3d 497 (1st Dep't 2018). "A cause of action under the statute 'requires a showing of 'egregious conduct or a chronic and extreme pattern of behavior' on the part of the defendant attorneys that caused damages.'" Remler v. Cona Elder Law, PLLC, 2022 WL 4586243, at *6 (E.D.N.Y. Sept. 29, 2022) (citation omitted). "Moreover, plaintiff's allegations of deceit or the intent to deceive must be pled with particularity." Id.

Plaintiffs' Judiciary Law § 487 claim fails on multiple levels. First, the claim is predicated on Defendants having appeared and filed documents on Plaintiffs' behalf in the Underlying Action despite the supposed absence of an attorney-client relationship. (Compl. at ¶¶ 161-66). Yet the Complaint confirms that such a relationship existed. Plaintiffs admit executing the Citadel Business Legal Plan Membership Agreement (the "Citadel Agreement"), whereby Citadel agreed to provide Plaintiffs with an attorney in the event Plaintiffs were sued by RDM. (Id. at ¶¶ 102, 109, 117-18). Plaintiffs also admit that Defendants were appointed as their counsel in the Underlying Action pursuant to the Citadel Agreement, and that Defendants notified Plaintiffs of his appointment on December 12, 2023. (Compl. at ¶ 122, Exhibit "D"; Marshall Decl., Exhibit "D"). Though the Complaint alleges that Plaintiffs never executed the retainer agreement Defendants emailed (Compl. at ¶ 126), "'[a]n attorney-client relationship does not depend on the existence of a formal retainer agreement.'" Buchanan v. Law Offices of Sheldon E. Green, P.C.,

215 A.D.3d 790, 791 (2d Dep't 2023) (quoting Moran v. Hurst, 32 A.D.3d 909, 911 (2d Dep't 2006)).

Second, the Complaint fails to plead facts "that give rise to a strong inference of fraudulent intent." Bryant v. Silverman, 284 F. Supp. 3d 458, 469 (S.D.N.Y. 2018). Significantly, the Complaint nowhere alleges that Plaintiffs *ever* communicated to Defendants that they were refusing Defendants' appointment as their counsel in the Underlying Action, or that Plaintiffs instructed Defendants to refrain from filing or serving documents in the Underlying Action without Plaintiffs' prior review and approval. Thus, even assuming Defendants' litigation activities fell short of "best practices," their actions were not indicative of fraudulent intent let alone the sort of egregious conduct covered by Judiciary Law § 487.

Third, as discussed above, Plaintiffs have not alleged and cannot prove actual damages stemming from Defendants' conduct. "'Since Judiciary Law § 487 authorizes an award of damages only to the 'the party injured,' an injury to the plaintiff resulting from the alleged deceitful conduct of the defendant attorney is an essential element of a cause of action based on a violation of that statute.'" Philip S. Schwartzman, Inc. v. Pliskin, Rubano, Baum & Vitulli, 215 A.D.3d 699, 702 (2d Dep't 2023) (quoting Gumarova v. Law Offices of Paul A. Boronow, P.C., 129 A.D.3d 911 (2d Dep't 2015)).

Here, Defendants successfully defended Plaintiffs in the Underlying Action and spared them from the entry of a money judgment in RDM's favor. Though opposing counsel suggests that Defendants' advocacy may have had the indirect effect of increasing a hypothetical future fee award for RDM,[2] the fact remains that the Underlying Action is *still being litigated*, and the State

---

[2] "By forcing Plaintiffs to incur prejudicial judicial filings made without knowledge or consent, Defendants have increased the cost of attorney's fees and required Plaintiffs to pay the MCA company's litigation costs and fee." (Marshall Decl., Exhibit "K" at 4).

Court has yet to award RDM any monetary relief. (See Marshall Decl., Exhibit "I"). A Judiciary Law § 487 claim cannot be predicated on speculation. Jean, 163 A.D.3d at 500 ("[T]he injury that plaintiff alleged to have suffered as the result of defendants' deceit is speculative, render that [Judiciary Law § 487] cause of action invalid."). In any case, Plaintiffs nowhere allege that they would have insisted upon a different course of action if Defendants had discussed the various filings with them in advance.

Accordingly, the Complaint's first cause of action for violation of Judiciary Law § 487 should be dismissed for failure to state a claim.

**B.**    **Plaintiffs Fail to State a Claim for Legal Malpractice**

"The elements of a claim of legal malpractice under New York law are: (1) an attorney-client relationship at the time of the alleged malpractice; (2) attorney negligence; (3) proximate causation; and (4) actual damage to the client." Bryant, 284 F. Supp. 3d at 470. "To plead the element of proximate cause, a plaintiff must allege that but for the attorney's negligence, she would have prevailed in the underlying matter or would not have sustained any ascertainable damages." Id. at 474 (cleaned up); Law Practice Mgmt. Consultants, LLC v. M&A Counselors & Fiduciaries, LLC, 599 F. Supp. 2d 355, 359 (E.D.N.Y. 2009). Moreover, "[m]ere speculation about a loss resulting from an attorney's alleged omission is insufficient to sustain a prima facie case of legal malpractice." D'Adamo v. Cohen, 232 A.D.3d 848, 849-50 (2d Dep't 2024).

The Complaint mainly asserts that Defendants committed malpractice in the Underlying Action by failing to discuss or provide Plaintiffs with various filings in the case. The Complaint references: (1) the verified answer Defendants filed on behalf of Plaintiffs; (2) the motion to dismiss Defendants filed on behalf of Plaintiffs; (3) the motion for summary judgment filed by RDM; and (4) the opposition Defendants filed to RDM's summary judgment motion on behalf of

Plaintiffs.  (Compl. at ¶¶ 135-44).  Even assuming the alleged lack of communication regarding these documents qualified as negligence, the Complaint pleads no facts to suggest that Defendants' actions proximately caused Plaintiffs actual and ascertainable damages.  Again, Plaintiffs nowhere allege that they would have instructed Defendants to change their filings in any way.  And Defendants were successful in fending off RDM's summary judgment motion.  If Plaintiffs ultimately lose to RDM in the Underlying Action when they "should have" won, it will be because of their new counsel at B&B.

The Complaint also includes a throwaway line about how Defendants supposedly "ignored discovery requests [from RDM] that had been filed on the docket on October 18, 2024, resulting in the waiver of Defendants' (sic) rights." (Compl. at ¶ 6).  However, an attorney cannot be held liable for malpractice that preceded a change in counsel where the "[the client's] successor counsel had sufficient time and opportunity to adequately protect [the client's] rights." Somma v. Dansker & Aspromonte Assocs., 44 A.D.3d 376, 377 (1st Dep't 2007).  In such cases, "'the proximate cause of any damages sustained by the [client] [is] not the alleged malpractice of [predecessor counsel], but rather the intervening and superseding failure of [the client's] successor attorney.'" Davis v. Cohen & Gresser, LLP, 160 A.D.3d 484, 487 (1st Dep't 2018) (citation omitted).

Here, the September 17, 2024 compliance conference order filed in the Underlying Action set a November 28, 2024 deadline for responses to discovery demands – *one week after* B&B ostensibly took over as Plaintiffs' defense counsel in the Underlying Action (and *months after* B&B began communicating with Plaintiffs behind the scenes).  (Marshall Decl., Exhibit "G"; Compl., Exhibit "C" [Email dated July 26, 2024]).  Thus, even assuming a failure to timely respond to RDM's discovery requests could support a malpractice claim – which it could not – it is B&B that committed the malpractice.

Finally, to the extent Plaintiffs intend to argue that Defendants committed legal malpractice by failing to convey an alleged "email settlement offer" to Plaintiffs, (ECF Doc. 15 at 4), any such contention should be rejected outright.  That allegation was made for the first time in Plaintiffs' pre-motion letter, rather than the Complaint, and Plaintiffs chose not to amend their pleading following the exchange of pre-motion letters despite this Court's Individual Practices.  (See Marshall Decl., Exhibit "K").  "'[I]t is axiomatic that [a] Complaint cannot be amended by the briefs in opposition to a motion to dismiss.'"  Black v. Ganieva, 619 F. Supp. 3d 309, 334 n. 15 (S.D.N.Y. 2022) (quoting In re Bystolic Antitrust Litig., 583 F. Supp. 3d 455, 489 (S.D.N.Y. 2022)); Zirogiannis v. Seterus, Inc., 221 F. Supp. 3d 292, 303 (E.D.N.Y. 2016) ("[T]he Court may not rely 'on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.'") (quoting Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir. 2000)). The same logic applies to Plaintiffs' pre-motion letter.

Regardless, Plaintiffs' unpled allegation is inadequate.  A cause of action for legal malpractice premised on a lost settlement opportunity is not viable absent allegations (and ultimately proof) that, "but for defendants' alleged negligence, [plaintiffs] would have accepted the offer of settlement and would not have sustained any damages."  Drasche v. Edelman & Edelman, 201 A.D.3d 434, 435 (1st Dep't 2022); Magnacoustics, Inc. v. Ostrolenk, Faber, Gerb & Soffen, 303 A.D.2d 561, 562 (2d Dep't 2003).  Here, Plaintiffs' pre-motion letter does not describe or attach the alleged "settlement offer," or even say whether the offer was withdrawn. (Marshall Decl., Exhibit "K" at 4).[3]  Nor does opposing counsel claim that Plaintiffs would have accepted the offer if it had been conveyed by Defendants.  Moreover, given that no judgment "for

---

[3] Though the letter stated that "[a] true and correct copy of the email settlement offer is annexed hereto as Exhibit A," no such exhibit was included.  (Marshall Decl., Exhibit "K").

increased fees" has been entered against Plaintiffs in the Underlying Action, Plaintiffs cannot plead actual and ascertainable damages.

Accordingly, the Complaint's second cause of action for legal malpractice should be dismissed for failure to state a claim.

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that this Court grant their motion and issue an order dismissing the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

Dated: Woodbury, New York
      April 8, 2025

**KAUFMAN DOLOWICH LLP**

By: _____

Brett A. Scher, Esq.
Adam M. Marshall, Esq.
*Attorneys for Defendants*
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
(516) 681-1100